VERSER, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals, District I

*No. 77–375–CR.  Submitted on briefs July 5, 1978.—*
*Decided August 16, 1978.*
(Also reported in 270 N.W.2d 241.)

† Petition to review denied November 16, 1978.

320

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender and *Michael Yovovich,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general and *Thomas J. Balistreri,* assistant attorney general.

Before DECKER, C.J., CANNON, P.J., and MOSER, J.

DECKER, C.J. A criminal complaint issued on October 12, 1971, charged the plaintiff in error, James A. Verser, with robbery and attempted murder, contrary to secs. 943.32(1)(a), 940.01, 939.32 and 939.05, Stats. Following a preliminary hearing, an information was filed on November 29, 1971, charging Verser with attempted murder, party to a crime, and robbery. On December 14, 1971, he was arraigned before Judge Herbert J. Steffes. Two months later Verser was convicted on a separate charge of armed robbery following a jury trial before Judge Steffes. On August 28, 1972, Verser requested a substitution of judge for Judge Steffes. The case was transferred October 5, 1972, to Branch 18 of the circuit court, presided over by Judge Seraphim. The court judgment roll contains a notation that the transfer was made because of the congested calendar of Judge Steffes. On October 18, 1972, Verser, pursuant to sec. 971.20, Stats., requested that a judge be substituted for Judge Seraphim.

On November 17, 1972, Judge Seraphim set a trial date and commenced a *Wade* hearing in conjunction with Verser's motion to suppress pretrial identification evidence. Because of various complications, the hearing was not concluded until March 21, 1973, when the court denied the suppression motion. Following his ruling, Judge Seraphim reconsidered his earlier refusal to grant the substitution request. He had based the refusal upon the fact that the request was made after the arraign-

ment before Judge Steffes. After reconsideration, the requested substitution was granted.

The case was then transferred to Judge Coffey. On October 29, 1973, Judge Coffey was notified that Verser and the state had reached a plea agreement. By the terms of that agreement, the defendant would enter a guilty plea to an amended information charging armed robbery and the state agreed to dismiss the attempted murder charge, reading in that charge for the purposes of sentencing. The state also agreed to recommend that the sentence imposed be ordered served concurrently with the sentence he was presently serving. In the course of establishing the factual basis for, and the voluntary nature of, the proposed guilty plea, the following occurred:

*The Court:* Have any threats or any promises been made to you by anyone at all other than what has been recited here in Court that the District Attorney will recommend to this Court that you be sentenced to the Wisconsin Prisons for a period of up to 25 years concurrent with the 18 year sentence you are serving at this time?
*Defendant:* Yes.

There was no follow-up inquiry with respect to the answer at this or any other hearing to determine what those threats or promises may have been. After accepting the guilty plea, the court sentenced the defendant to the recommended term of imprisonment. Two weeks later Verser was returned to circuit court from the Wisconsin State Prisons and advised by Judge Coffey in the presence of Verser's counsel that at Verser's earlier appearance the information which charged him with robbery had not been amended to charge armed robbery to which he pleaded guilty. Verser was given the choice of agreeing to his earlier negotiated plea of guilty to the amended charge of armed robbery or a rejection of his

guilty plea and a trial on the original charges. Verser and his counsel advised the court that Verser wished to reassert his guilty plea to an amended charge of armed robbery and asked that the court accept that plea. Judge Coffey did so, found Verser guilty and sentenced him to the recommended term of twenty-five years imprisonment concurrent with the eighteen-year sentence Verser was serving.

Three issues are presented to this court:

1. Was the judge who presided at Verser's suppression hearing without jurisdiction because of a timely substitution request?

2. Was Verser's plea of guilty to the amended charge of armed robbery voluntary and intelligent?

3. Should the case be remanded to the trial court for determination of the nature and extent of threats to the defendant referred to at his original guilty plea hearing?

1.

WAS THE JUDGE WHO PRESIDED AT VERSER'S SUPPRESSION HEARING WITHOUT JURISDICTION BECAUSE OF A TIMELY SUBSTITUTION REQUEST?

Absent a record showing that the trial judge is, in fact, prejudiced,[1] a defendant in a criminal case is limited to the procedure prescribed by sec. 971.20, Stats., in requesting a substitute for the trial judge. That statute was interpreted in *Baldwin v. State*, 62 Wis.2d 521, 215 N.W.2d 541 (1974), to extend the time for filing a proper request for a substitution of judge from the time of

[1] *See Voight v. State*, 61 Wis.2d 17, 21, 211 N.W.2d 445 (1973) and cases there cited. *Also see State v. Bell*, 62 Wis.2d 534, 536, 215 N.W.2d 535 (1974).

first receipt of a not guilty plea at the arraignment to the confirmation of the not guilty plea before a subsequently assigned judge when he sets the date for the trial that he is to conduct. That broad interpretation of arraignment effectuated the constitutional right to a fair trial in a circumstance where there was an unexpected subsequent assignment of a new trial judge.[2] Nevertheless, timely filing of the request for substitution is required.[3]

Wisconsin has a long legislative history of limiting a defendant to one opportunity to exercise the right to disqualify a trial judge without the obligation of an affirmative showing of prejudice.[4] We view the statutory interpretation in *Baldwin* as intended to effectuate the constitutional purpose of a fair trial by affording to a criminal defendant a single right to request a substitute for a trial judge unexpectedly assigned to the case after the first receipt of a not guilty plea.[5] Unless *Baldwin* is interpreted to allow a single right to request substitution, the statute would be impermissibly construed in a manner contrary to its express provision that a request for substitution is limited to the disqualification of only one judge.[6]

---

[2] *State v. Bell, supra,* note 1.

[3] *Sprang v. State,* 63 Wis.2d 679, 683, 218 N.W.2d 304 (1974).

[4] *Meverden v. State,* 258 Wis. 628, 634–35, 46 N.W.2d 836 (1951); *Perrin v. State,* 81 Wis. 135, 138, 50 N.W. 516 (1892).

[5] *State ex rel. Akavickas v. Marathon County,* 77 Wis.2d 297, 298, 252 N.W.2d 386 (1977).

[6] "971.20 **Substitution of judge.** . . . .

"(2) Upon the filing of such request in proper form and within the proper time the judge named in the request shall be without authority to act further in the case except to set bail if requested by the defendant. Not more than one judge can be disqualified in any action. All defendants must join in any request to substitute a judge." The statute has since been amended by ch. 149, 1975 Wis. Laws.

Sustaining Verser's contention that he had effectively disqualified Judge Seraphim would have afforded him the opportunity successively to disqualify two trial judges. We view the transfer of Verser's case from Judge Steffes to Judge Seraphim as the fulfillment of Verser's request to substitute another trial judge for Judge Steffes. The docketed reason for the transfer to Judge Seraphim was congestion of the calendar of Judge Steffes. We believe it probable that this case was selected for transfer because of the substitution request on file. Whether or not that was the reason for selection of this case for transfer, it is clear that Verser exercised his right to disqualify Judge Steffes and obtained the benefit of that disqualification by the transfer. As prescribed by statute, transfer of the case was the only action[7] Judge Steffes could take. Because that action was taken when Verser's request for substitution was on file and pending, we deem the transfer, regardless of the administrative explanation, to be fulfillment of the request for substitution of Judge Steffes. Any other construction of the action taken would accord to Verser two opportunities to request substitutions, a result contrary to the express limitation of the statute.[8]

We find that Judge Seraphim did have jurisdiction to conduct the hearing and make the ruling on defendant's motion to suppress evidence.

2.

## WAS VERSER'S PLEA OF GUILTY TO THE AMENDED CHARGE OF ARMED ROBBERY VOLUNTARY AND INTELLIGENT?

Verser claims that his second guilty plea to armed robbery, which occurred when he was returned from

---

[7] *Supra,* note 4.

[8] *Supra,* note 6.

prison to the trial court two weeks after the first guilty plea proceeding, was not voluntary and intelligent. The contention is based upon the assertion that at the second plea proceeding he was not informed of an option to stand convicted of robbery and have his sentence reduced to conform to that charge. It is asserted that conviction of robbery, an included crime of armed robbery, was barred by sec. 939.66, Stats., and by double jeopardy principles.[9]

We believe the failure to amend the information from robbery to armed robbery did not afford Verser the opportunity to escape his plea bargain and obtain a reduction of his sentence to a maximum of ten years. Additionally, as he states in his brief, he would necessarily have been subjected to prosecution for attempted murder. Clearly and concisely, at his second guilty plea hearing, he asked and received the fruits of his initial plea bargain. The suggestion that the second plea of guilty was not constitutionally and statutorily antiseptic is based upon a conviction of robbery. Verser did not plead guilty to robbery nor did the trial court find him guilty of robbery. On the contrary, the record clearly reflects that the court, the defendant and both counsel understood that the charge to which the defendant was pleading guilty was armed robbery. The court found the defendant guilty of armed robbery. Therefore, we view the second plea proceeding as merely amending the information, pursuant to sec. 971.29, Stats., to conform to the plea agreement, and the proof, without prejudice to the defendant.[10] Because there was no prejudice to the de-

---

[9] *Brown v. Ohio*, 432 U.S. 161 (1977).

[10] *Craig v. State*, 55 Wis.2d 489, 492–93, 198 N.W.2d 609 (1972). *See also Wagner v. State*, 60 Wis.2d 722, 728, 211 N.W.2d 449 (1973); *State v. Nowakowski*, 67 Wis.2d 545, 571, 227 N.W.2d 697 (1975).

fendant, the defect or imperfection in the information was cured and its validity maintained by sec. 971.26, Stats.[11]

Defendant Verser contends that he should be allowed to withdraw his guilty plea to armed robbery, stand upon a conviction of robbery and obtain removal of his post-conviction motion to enable him to decide whether he wishes to withdraw his "plea to robbery." That course of action is urged upon us without so much as a factual allegation or description of manifest injustice to Verser. We decline the invitation to accompany him on his journey to "Wonderland."

The inaccuracy of his position is demonstrated by his reference in his brief to his "plea to robbery." The guilty plea to which he refers was to armed robbery. The absence of prejudice to Verser in amending the information is apparent in his contention that a reduction in sentence from twenty-five years concurrent to ten years concurrent would occur, but he would be exposed to the prospect of an additional thirty-year consecutive sentence for attempted murder.

Cautiously, the trial judge afforded Verser an opportunity to withdraw his guilty plea and proceed to trial upon the original information. When Verser refused that opportunity, he ratified his original plea agreement. His subsequent postconviction motions waived any complaint with regard to the amendment of the information by not raising the question.[12] He has supplied no explanation or reason which justifies relieving him from that waiver.

[11] *State v. Bagnall*, 61 Wis.2d 297, 305, 212 N.W.2d 122 (1973); *Clark v. State*, 62 Wis.2d 194, 200–01, 214 N.W.2d 450 (1974); *State v. Waste Management of Wisconsin, Inc.*, 81 Wis.2d 555, 567, 261 N.W.2d 147 (1977); *Lambert v. State*, 73 Wis.2d 590, 602, 243 N.W.2d 524 (1976).

[12] Section 974.06(4), Stats.

For the reasons stated, we find Verser's guilty plea to have been voluntarily and intelligently made.

## 3.

## SHOULD THE CASE BE REMANDED TO THE TRIAL COURT FOR DETERMINATION OF THE NATURE AND EXTENT OF THREATS TO THE DEFENDANT REFERRED TO AT HIS ORIGINAL GUILTY PLEA HEARING?

Verser responded affirmatively when asked during the course of guilty plea acceptance whether any threats or promises had been made to him. The question was tripartite—it inquired about threats, promises, and excluded the sentence recommendation promise of the district attorney. We need only address the matter of threats because the district attorney's sentence recommendation was made and accepted by the trial judge and Verser has not contended that unfulfilled promises were made to him.

One might initially consider that the failure to inquire further about threats or promises was a judicial oversight that established error of constitutional magnitude.[13] We do not.

For approximately four years, and not until his fourth postconviction motion in September, 1977, did Verser raise the question of voluntariness of his plea. At that time he merely alleged that his plea was not voluntary because he was threatened and quoted the single question and answer. Verser has never in his motion, a supporting affidavit or in his brief supplemented that allegation with an explanation of what the threats were or how they made his plea involuntary.

---

[13] *Ernst v. State*, 43 Wis.2d 661, 170 N.W.2d 713 (1969); *State v. Reppin*, 35 Wis.2d 377, 151 N.W.2d 9 (1967).

Whether a guilty plea is voluntarily and intelligently made is a conclusion with respect to the state of mind of the accused. Inquiry with respect to threats and promises is made for the purpose of determining the accused's state of mind with respect to the voluntariness and intelligence of the guilty plea of the accused. Unless the threats coerce or induce the plea to an extent that deprives the accused of understanding and free will, they provide no basis for rejection of the guilty plea or later withdrawal.[14]

Verser was threatened by a pending charge of attempted murder, party to a crime and robbery. Although at the time of his plea bargain he was already under a lengthy sentence, the pending charges, if substantiated at trial, posed the threat of a lengthy consecutive sentence. That kind of a threat is irrelevant to the voluntariness of his plea absent evidence of lack of mental or physical capacity to evaluate the risks of trial or plea agreement.[15]

The plea agreement in this case was fulfilled in its entirety when the court dismissed the charge of attempted murder, party to a crime, ultimately amended the robbery charge to armed robbery and imposed the sentence recommended as a part of the plea agreement. Verser's experienced trial counsel advised the trial court when the guilty plea was received that it was his opinion that the defendant "freely, voluntarily and understandingly entered his guilty plea." When afforded the opportunity to inquire of the defendant on the record about any other matter, trial counsel stated he did not wish to do so. The defendant refused a similar offer from the trial court

[14] *State v. McKnight*, 65 Wis.2d 582, 590–591, 223 N.W.2d 550 (1974).

[15] *Brady v. U.S.*, 397 U.S. 742, 750–751 (1970).

before and after evidence was received establishing the factual basis for the charge of armed robbery. Two weeks later when Verser was returned to court from prison for the purpose of amending the original information from robbery to armed robbery, Verser was given an opportunity to withdraw his guilty plea and proceed to trial on the original charges. He refused that opportunity and reasserted his guilty plea. At that time this question was asked and answered:

*The Court:* Now, you entered a guilty plea last week to the said crime of armed robbery freely, voluntarily, and understandingly. Isn't that true?
  *Defendant:* Yes.

We believe that under the circumstances detailed, that question rectified the earlier judicial oversight and that Verser is concluded by his answer. The allegation that the plea was not voluntary is conclusory and unsupported factually. We remain unaware of the respect in which he was threatened and the effect it had, if any, upon his guilty plea. We find it inexplicable that for more than four years he has not alleged the nature of the threat and how it affected the voluntariness of his guilty plea. For these reasons we believe that the trial court was correct in denying Verser an evidentiary hearing and in denying his motion for postconviction relief.[16]
  *By the Court.*—Orders affirmed.

---

[16] *See Levesque v. State*, 63 Wis.2d 412, 420–21, 217 N.W.2d 317 (1974).